Next in the second case on this morning's calendar, that is 22-15698, Robin Hall v. Debra Maioho-Pohina, and we'll hear first from Mr. Along on the video. Good morning, Your Honors. May it please the Court, I am William Along, Deputy Corporation Counsel for the City and County of Honolulu, and I'm representing Appellant Debra Maioho-Pohina. I would like to reserve four minutes as rebuttal. Your Honor, Defendant Appellant Debra Maioho-Pohina is an officer with the Honolulu Police Department, and we're here today to address the District Court's denial of Officer Maioho-Pohina's qualified immunity with respect to the equal protection claim in the second amended complaint. I would like to focus my discussion today on three issues. The first is to consider the Court's directive to discuss the issue of whether this Court has jurisdiction to consider this appeal. The second is whether the appeal is somehow not ripe or mooted by Plaintiff's unresolved motion for leave to file a third amended complaint. And the final issue is the more substantive issue of the denial of qualified immunity, and that decision was erroneous. The first two issues are prioritized because they were not really addressed by the lower court, and so there's less discussion and analysis. And in the hopes of not wasting this Court's time, I'd rather spend some time on things that are less considered in the briefing. With respect to jurisdiction, the Court specifically instructed the parties to address the basis for the Court's jurisdiction in light of Pelletier v. Federal Home Loan Bank of San Francisco. Based on that brief instruction, it was a little unclear whether the Court was asking for briefing on, one, whether this Court has the authority to consider sufficiency of the complaint as well as both prongs of the qualified immunity analysis in this appeal, or two, whether the Court has jurisdiction to consider this appeal in that it turns on issues of law as opposed to contested issues of fact. In either event, the answer is yes. Pelletier and numerous cases since have explicitly considered at least one, if not more, of the following three, of either the adequacy of the pleadings as well as both prongs of the qualified immunity analysis. Many of those cases are cited in our opening brief, and so I won't go into much more than that. I think it's also significant that plaintiff kind of implicitly concedes the point in that there's no real argument or authority for the opposite proposition that the Court is somehow precluded on the Pelletier from considering both sufficiency of the complaint as well as both prongs of the qualified immunity test. In fact, it seems more likely the Court wanted to address the jurisdictional question of whether this appeal turns on an issue of law as opposed to questions of fact, and clearly it is the former. The claims that appellants fail to view allegations in the light most favorable to the non-mouvant, or that appellant outright created facts that were never alleged, is demonstrably false. As an example, Appellee's briefing claims that she never alleged that she stole the phone from Mr. Letoto and that defendant's argument or reliance on any such allegation is improper and kind of void from the beginning because that was never an allegation. While admittedly plaintiff and appellee may not have used that exact phrasing in the second amended complaint, it does nevertheless affirmatively allege that plaintiff was to meet with Mr. Letoto to, among other things, return the phone that he had provided to her for use for business purposes. That was her allegation, that she knew that that phone was provided to her for that and that the phone didn't belong to her. It is also affirmatively alleged that she did not, in fact, return the phone at that initial meeting for whatever reason because of the confrontation, but the phone was not returned until after the police arrived to investigate. Finally, plaintiff alleged that Kohanui relied on information from Mr. Letoto regarding the alleged theft. So, it was clear, even from her allegations, that there was an alleged theft and that the facts for this alleged theft were provided by Mr. Letoto. Clearly, the second amended complaint alleges, then, that Letoto claimed that plaintiff had stolen the phone. Plaintiff's denial of that accusation or assertion of a counter-narrative is different from failing, from the accusation that the mouvant fails to accord inferences in the light most favorable to the law. Well, I mean, it seems like the key issue to me in judging the sufficiency of the complaint is what did the sergeant know about the conflict issue? I mean, because it's pretty unusual when you dial 911, you say someone is trying to break into my home, someone I'm having an argument with, and the responding officer is the business partner of the person breaking into the home. Pretty unusual fact. But the second amended complaint doesn't allege with any clarity at all when the sergeant learned that fact, and it seems critical to the issue of the equal protection claim. So maybe the current complaint is invalid, but peeking ahead to the third amended complaint, it seems that they are going to now allege facts that seem to cure that. So maybe the answer is that this is defective, and so we need to reverse or vacate this judgment, but do we leave open leave to amend, then? You know, I think that's, I think there are a few points made, and I think that's entirely accurate that critical to the analysis of this case is what Maya Ojo Pohina knew and when she knew it, and also an agreement that that is not specifically alleged in the second amended complaint. So it's possible that the remedy, I mean, we're not going to presume to tell either this court or the lower court what to do if this court should vacate the order denying qualified immunity, and it's even as plaintiff alludes to in their briefing, there is, there was a motion for a third amended complaint. It was not, it was argued but not decided upon. So it may very well be that after this court, you know, should this court decide to vacate that, that there would be a third amended complaint, but at this point, you know, it's kind of speculative and conjecture to say what would be cured and what would not be cured. We do still have arguments that those allegations in the third amended complaint are conclusory and at best based on... But you agree that issue, the adequacy of any of the allegations in the third amended complaint is not in front of us and something we don't have jurisdiction over? I do, Your Honor, yes. Did that answer all of Your Honor's questions? Yes, you've answered the questions I had there. Thank you. Moving on, I think another distinction regarding the jurisdictional issue is plaintiff's allegation that the court is not required to accept as true under the Plombly-Iqbal standards. However, it is different from saying that the court is not required to accept those conclusory allegations from the plaintiff or appellee's position that we are contesting questions of fact. I think it's well established that considering sufficiency of the complaint is not a factual determination. It's a question of law. Mr. Wong, I appreciate you getting to the question of qualified immunity. Sure, Your Honor, I can move on to that. I think the first problem with the court's finding that the plaintiff's adequate and equal protection violation is that plaintiff was not a member of a protected class, nor was plaintiff similarly situated to the latoto. The finding to the contrary was erroneous and inconsistent with the allegations in the second amended complaint. In the court's order denying qualified immunity, there was a brief citation in the equal protection analysis section that Myoho Kohina simply kind of assumed based on limited facts that she was in fact entitled or that she did successfully state a claim for an equal protection violation. But analysis of the case law is that an equal protection violation requires that either she be part of a protected class and there's no argument either, well I guess the court's use of the phrase a protected class because of a First Amendment violation I think is erroneous and even plaintiff and appellee in their brief I think characterizes it as a misstatement. But whatever the underlying cause, simply the fact that there's an allegation of a First Amendment violation does not in and of itself place plaintiff, appellee in a protected class. Similarly, there are insufficient facts alleged to establish that they are similarly situated. If the court, well I mean, I guess it's pretty clear from our briefing that they were not similarly situated. In fact, there's no allegation that Myoho Kohina even spoke to or addressed Leitoto. So that is a critical difference in their situations. Your Honor, there's no allegation that, I'm sorry, one minute. There's no allegation that, you know, about any of the interaction between Myoho Kohina and Leitoto such that their difference in their treatment could be based on an adequate showing of similarly situated. You had said you wanted to save four minutes for rebuttal. Do you want to save the rest of your time? Yes, Your Honor. I believe much of my argument is covered in the briefing, so I would prefer to save that as rebuttal. All right, we'll hear now from Mr. Kim. May it please the Court, my name is Wookie Kim. I represent Plaintiff Appellee Robin Hall, who is seated with me here this morning. The bottom line is that this Court should affirm the District Court's denial of qualified immunity, and if the Court is inclined not to affirm, this Court should first consider dismissing the appeal as premature or for lack of jurisdiction. Well, it's not premature. I mean, because there is a legal question, which is the adequacy of this set of allegations and whether or not, if they're taken in the light most favorable to the plaintiffs with all inferences construed under Iqbal Twombly, does it require dismissal right now on that basis on grounds of qualified immunity? That issue we have jurisdiction over, and if the answer to that question is no, that it's not adequate to sustain qualified immunity, then we have a question of what our instruction should be for the remand. But we do have that question, whether these allegations taken in the light most favorable spell defeat on qualified immunity grounds just as a matter of law. Sure, Your Honor, and I think because you clarified that the instructions on remand will clarify what happens next, I think we would concede that this dispute can be resolved and should be resolved. So on the merits itself, before addressing the merits, I wanted to respond to some of the arguments that Appellant just made just now. One of them is this idea that she is not disputing the facts, but on the contrary, there were many facts that were disputed by. Focus on the one fact that I asked your opposing counsel. I think carries a lot of weight, which is what the sergeant knew about the problem. The problem being that the officer who showed up, who made the decision as to whom to believe and whom to arrest, when they both were telling stories that would frankly have supported the arrest of one, but not the other, or vice versa, and he had to make that judgment, was the business partner of one of the two people. Now, the complaint does not allege, and the district court noted in a footnote, does not allege that she knew that when she arrived, or that she knew that on the second day when she came back, or yes, when she came back after they called about the son, or that she knew when she called on day three. It's not in the complaint. But if she doesn't know that fact, how do you have any kind of a claim to be able to defeat qualified immunity? Yes, the knowledge of the conflict of interest is a little bit of a red herring because that fact isn't necessary to hold Ms. Maya Hopohina liable here because, again, the complaint alleges— How can that be? Because officers arrive at scenes all the time where people tell different stories. He did this, she did that, they did that. They can't arrest everyone and just say, well, I'll believe everyone. They have to make a judgment. They assess the situation, make a judgment. And sergeants reviewing reports coming in are going to see those kind of judgment calls all the time. I believe this one, not that one. I arrested this person, not the other. And they're liable for every one of those judgments just because it crosses their desk and there's a class of one equal protection claim between the two people, one believed and one not? So I'd like to point the court to paragraph 198 at ER 155. And there the complaint alleges that Ms. Hall, in her interaction with Maya Hopohina, explained the multiple ways in which Kohanui had committed misconduct against her. And as the complaint— What paragraph is this? This is paragraph 198, which I believe is at ER 155. The point is that knowledge of the specific conflict of interest was not the only— Wait a minute. Hold on. Plaintiff explained the multiple ways in which Officer Kohanui had committed misconduct against her, but your own complaint says that when she met with the sergeant, on those two occasions, she did not yet know about the conflict, that that had not been discovered until her partner did the Internet research later. Correct. And so that paragraph doesn't establish that the sergeant knew about the key fact that makes this situation problematic. Correct, but that allegation establishes that my client conveyed to Maya Hopohina the other misconduct that Kohanui had engaged in. And the most important act of misconduct at issue here is the failure to file a police report. And so my client conveyed in that conversation to Sergeant Maya Hopohina that she had been denied that right to file— Because an officer arrives at a scene and arrests a person, and the person they're arresting who they think committed a crime and they think is lying, do they have to take a police report that they believe to be false by that person? Even though their judgment based on investigation, is that your position? Well, so construing the record in the light most favorable to my client, there's no plausible inference that she was trying to make a false report. But as to the reporting of a crime, that is protected under the First Amendment's petition clause. Counsel, did Ms. Hall request the sergeant to file a report herself? Yes, she did. Where is that allegation? Well, that allegation isn't in the second amended complaint, but it is in the third amended complaint. Which is not before us. Which is not before the court at this time. All right. But the fundamental point that I wanted to make about the police report is that this is a right that is protected by the First Amendment's petition clause, as this court made clear in Entler v. Gregoire. And because of that, this is also a police investigative decision that, I'm sorry, a police investigative service over which police officers have no discretion. And so this case and the focus on the failure to file a police report does not implicate sort of the otherwise discretionary decisions that police officers make on a daily basis. But a supervisor who acquiesces and doesn't do anything, is that a Section 1983 violation? Yes, it is, Your Honor. And that goes to one of the primary misunderstandings that pervades appellant's briefing, which is this idea that if a supervisor or any official wasn't present on the scene when the initial constitutional violation occurred, that they cannot be liable. But of course, that's contrary to a long line of precedent by this court, including Taylor v. List and Starr v. Baca, where the court confirmed that even a supervisory official personally participates in constitutional violations if they, quote, knew of the violations and failed to act to prevent them. In those cases, there were actual reports after the incidents that put the supervisor on notice of all the details. I guess here, going back to Judge Collins' question, in the record before us, at least in the complaint, there isn't that record of the supervisor or the defendant knowing exactly what happened. Well, I would disagree that that's not in the complaint because, again, Paragraph 198 does explain that Ms. Mayoho-Kohina had a conversation with Ms. Hall. But about the conflict of interest. That's really kind of the crux here, isn't it, that the police officer committed misconduct because the other person was his business partner? Again, Your Honor, I think the focus on the knowledge of the conflict of interest is a little bit of a red herring because regardless of whether and when Sergeant Mayoho-Kohina knew about the conflict of interest, reading the complaint and drawing the reasonable inferences from it, it is plausible that Sergeant Mayoho-Kohina at least knew that a fellow officer had denied my client her fundamental right to file a police report. So at least on that basis, she knew, she, meaning Sergeant Mayoho-Kohina, knew of a violation of the First Amendment and then failed to act to address it. And failing to address it doesn't mean that the supervisor has to take the report or the supervisor has to talk to that officer or reprimand him? When it comes to the failure to file a police report, yes, it would be. And that is what's alleged, actually, in the Third Amendment complaint. Again, not before this Court at this moment. But yes, that is alleged that that would have been a solution. That would have addressed the constitutional violation. The police report that was written up in connection with her arrest, did that recount her version of events? The report is not in the record. However, no, it did not. And again, that is part of what is so problematic here is that the only narrative that's included is the narrative that she stole this business phone. And of course, it is our client's position that she was in lawful possession of that phone, even if there was a dispute over the return of it. So I know it's not in the report, but the report doesn't say she was interviewed and here's what she claimed is her side of the story? No, Your Honor. And there's no record of anything about her assault, about any of her allegations. That is precisely why this right to file a police report is so important, and she was denied. But this detail that the report did not even capture her side of the story being omitted from the police report, that isn't in the complaint. No, and I have an explanation for that, which is that my client, before we filed this lawsuit, my client tried as hard as she could to try and obtain the relevant police reports, and the police department would not release the reports to our client. But inexplicably, soon after we filed the lawsuit, the police department did finally release the police reports to us. And that was the first and only time that we had even seen the police reports. If the police report had recounted her version of events, would that have satisfied the constitutional standard that you're asserting? I believe so, because, and again, this goes to— Even though it's basically an arrest report of her, if it had recounted her version of the story and then he says, I don't believe it, and therefore I arrested her because I took this version as true, that— Oh, I'm sorry. No, if it's just her statement incorporated into the theft report, that would not be sufficient because she is entitled to petition on her own about the separate crimes that she is alleging. But she's entitled—I mean, she can mail anything she wants to the police department, but is she entitled to have the officer write down a report that takes her side of the story? Yes, that's the fundamental function of the filing of a police report. It is the way that the government, through its police department, documents accusations of crime. And so my client was alleging that Mr. Lototo had engaged in assault and battery, breaking and entering, and that is the first step in the police investigative process. And I also wanted to be clear that my client is not alleging that she was entitled to the investigation unfolding in a specific way. She's not asserting, for example, that there was a failure to protect her or that Mr. Lototo needed to be arrested. It's simply she wanted to exercise her First Amendment right to petition for redress of grievances by filing a criminal complaint accusing someone of having committed a crime. So now you have—I know it's not in front of us, but you—and your brief does tell us some of what's in the third amended complaint and the new allegations. So if we were to find that the current version of the complaint doesn't have enough detail in it, I take it it's your position we should leave open the question whether or not the new complaint with the additional details would now satisfy those standards and let that be revisited by the district judge on remand in light of whatever guidance we gave? Exactly, Your Honor, but I still would disagree that the second amended complaint— I believe that the second amended complaint still plausibly alleges Ms. Mayoho-Pohina's liability because, again, we know that Ms. Hall— But you're alleging the supervisor's liability as to a past act. This is not the continuing violation as it was in Baca. I would disagree, Your Honor, because the failure to allow someone to file a police report can continue if a supervisor knows about that failure and does nothing to address it and actually— since the other officers haven't taken my report. Yes, and— And that's not alleged in the complaint. That specific allegation is not alleged in the second amended complaint. Is it in the third amended? Because I thought I heard you say that you could add that allegation, but is it actually in the third amended complaint? Yes, and I would point the court to S.E.R. 125, S.E.R. 144 through 146, and S.E.R. 178 to 180, and there the third amended complaint summarizes how all three officers, including Sergeant Mayoho-Pohina, were involved in all of the misconduct, and so yes. And I see that my time is expiring, and so this court should affirm, but if not, in the remand instructions, this court should leave open the possibility for the court to decide the pending motion for leave. Thank you. Thank you, counsel. All right, we'll hear now a rebuttal from Mr. O'Long. Did we lose him? No, I apologize, Your Honor. I was muted. Sorry about that. Your Honor, I think as Your Honors have pointed out, that critical to this is the knowledge of when Officer Mayoho-Pohina knew of, or if she ever knew of, a conflict of interest. First of all, that is not a red herring. That is critical to the analysis. Second of all, alleging that there was... It is a little bit odd, and counsel said that her version is not even recounted in the report. It's just sort of airbrushed out, which is, that's very odd. You see lots of police reports, and they just dutifully write down what everyone said, even the ones they think are lying. They just write down what they said, and then they reach their conclusion and explain who they arrested. But to leave it out completely, that's very odd. Your Honor, I guess my argument to that would be that that is the red herring. It could very well be that it was odd, but the First Amendment doesn't guarantee, as Pelley asserts, a right to file a report. It guarantees a right to petition for grievance. Well, it would certainly go to an equal protection claim if you knew that the officer making the judgment between the two complainants, each complaining about each other, if you knew the officer was the business partner of one of the two, and then you look at the report and it airbrushes out any statements from the other person and their version of events, that kind of starts to add up to something that looks pretty troubling. I agree, Your Honor. I mean, I guess agree to an extent that that could be part of an analysis of a similarly situated equal protection argument or a class of one. Which all kind of suggests that maybe this sort of moved too quickly and maybe it just needs a fresh look by the district court in light of the more detailed allegations that are coming to light. Yeah, I think Your Honors have made kind of that suggestion, and I'm not opposed to it. I'm just of the mindset that what we have here today is the Second Amendment complaint. And while the resolution may very well be denial or overturning or vacating the order and then subsequent motions, practice, and litigation to occur is possible, but what we have here today is that it's not alleged. And it could not be, they referenced, I guess, paragraph 198 in the Second Amendment complaint in that they explained or that plaintiff appealee explained the nature of the misconduct. But that, as well, could not possibly include the fact that there was a conflict of interest or that Myoho Pohina knew of the conflict of interest because it's uncontested that at that point plaintiff didn't know. So the misconduct that she was alleging could not have included that. So that still leaves a failure to adequately allege knowledge of the conflict of interest. I guess, Your Honor, there was also some discussion by appellee about the basis for not including certain allegations in the complaint, specifically the provision of a police report and its timing. Although I'm not going to get into that, I would just point out to the court that that's not really the issue before the court here is the basis or reasons why it was included. However we got here, the end result is simply that the allegations in the Second Amendment complaint are insufficient. I see I've gone over my time a little bit, so unless the courts have additional questions, I thank you for your time and consideration. All right. I thank both counsel for their arguments in the case, and the matter just argued will be submitted.
judges: BEA, COLLINS, LEE